### Ralph Caldwell and Viola Caldwell, His Wife, v. The Board of Adjustment of Northampton Township.

Argued October 6, 1970, before President Judge BOWMAN, and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MANDERINO, MENCER and BARBIERI (who has since been appointed to the Supreme Court of Pennsylvania and did not participate in the decision).

*C. David Krewson,* with him *Stuckert, Yates and Krewson,* for appellants.

*E. Dillwyn Darlington,* with him *Cadwallader, Darlington and Clarke,* for appellee.

OPINION BY JUDGE MENCER, February 9, 1971:

The Plaintiffs have taken this zoning appeal from the denial of a special exception to permit the construction of multiple-family, two-story dwelling houses on their property. Plaintiffs' property consists of eighteen acres of land on Sackettsford Road, Northampton Township, Bucks County, and in an R-1 Residential Zone under the provisions of the Zoning Ordinance of the Township. However, the Zoning Ordinance permits a requested use if it can be constructed on sufficient land to provide not less than 15,000 square feet per family and if it is authorized as a special exception under certain standards set forth in the ordinance. The Board of Adjustment, after two hearings, denied plaintiffs' application for a special exception. An appeal was taken to the Court of Common Pleas of Bucks County which affirmed the Board. The lower court did not take any additional testimony and therefore the sole question before it was whether the Board of Adjustment had committed an error of law or had manifestly abused its discretion. *Archbishop O'Hara's Appeal,* 389 Pa. 35, 131 A. 2d 587 (1957).

A special exception is issued for an exceptional use if the Board of Adjustment determines its availability. Such uses are made available as a privilege, not as a right, assuming that the conditions detailed in the ordinance are found to exist. *Eves v. Zoning Board of*

*Adjustment,* 401 Pa. 211, 164 A. 2d 7 (1960) ; *Devereux Foundation, Inc., Zoning Case,* 351 Pa. 478, 41 A. 2d 744 (1945). The rules that determine whether the exception should be granted or refused are those enumerated in the ordinance.

The lower court concluded that the Board was properly guided by the standards in the ordinance and had not manifestly abused its discretion by refusing to grant the special exception. We agree. The evidence presented was carefully analyzed in the able opinion of Judge SATTERTHWAITE, as reported in 18 Bucks Co. L. Rep. 573 (1968). We have carefully examined the record and have found sufficient evidence to sustain the determination of the Board. We therefore find no abuse of discretion.

Order affirmed.

———

DISSENTING OPINION BY JUDGE MANDERINO:

I dissent. If the decision of the lower court in this case is allowed to stand, boards of adjustment throughout the Commonwealth may grant or deny citizens their rights under zoning regulations on the basis of irrelevant considerations, speculative problems, illusory difficulties, and may further allow the appropriation of property from one citizen for the benefit of other citizens without just compensation.

Mr. and Mrs. Caldwell are the owners of an eighteen (18) acre tract of land in Northampton Township. They filed an application before the Board of Adjustment to receive a special exception for the construction of apartments. The term "special exception" is a legal term; it does not imply a special favor which is not permitted under our constitutional controls. The Caldwells were, therefore, not asking for a special privilege granted by a Board of Adjustment only upon the grace of the king. What the Caldwells wanted was what the

zoning regulations of Northampton Township stated that they were entitled to have, unless the Board of Adjustment, according to specific standards noted in the zoning regulations, determined that the request would, in various ways, adversely affect the community.

The Caldwell property is located in an "R-1" District. In such a district, apartment buildings such as those which the Caldwells desire to construct are permitted. The Board of Adjustment can deny its permission only if it makes ultimate findings, applying the standards set out in the zoning ordinance, which are adverse to the applicants.

There are thirteen (13) standards enumerated in the Northampton Township Ordinance which must be considered by the Board in determining whether or not to grant a special exception. The Board found that four of these standards would not be violated in any way and further found that one of the standards had little relevance to the application. The Board, however, determined that what the Caldwells were requesting would be in violation of eight of the standards in the ordinance.

Almost all of the findings of the Board to back up the violations are of a "negative character". The Board's findings are replete with claims that the Caldwells failed to do many things and that their failures provide sufficient evidence to sustain the Board's ultimate findings that the eight standards were violated. However, it was not the Caldwells' burden to provide evidence showing that they did not violate the standards of the ordinance. *In Re O'Hara's Appeal*, 389 Pa. 35, 131 A. 2d 587 (1957). The Board was required to make ultimate findings according to the standards in the ordinance. These ultimate findings had to be sustained by basic findings which, in turn, had to be sustained by the evidence in the record. An

examination of the record here indicates that there was not legally sufficient evidence to sustain the Board's conclusion that the standards of the ordinance were violated.

The Zoning Board of Adjustment is a *zoning board* concerned with *zoning* problems. It is not an engineering board or a health board or a building inspection board. Essentially it was the Board's position that the Caldwells had to do many things which they did not do before they could be granted their "special exception" permit. One might say that what the Board wanted the Caldwells to do was practically to construct their apartment buildings *and then* to accept the determination of the Board as to whether everything was done or could be done acceptably. To require a citizen to expend large sums of money in providing extreme detail in his zoning application is to require an onerous and burdensome task which is totally unreasonable.

The Caldwells presented information to the Zoning Board as to exactly what they were going to do and how they would provide all that would be required for their apartment buildings. They gave as much data and information to the Board of Adjustment as a zoning board can reasonably require. To require a citizen to go further and expend additional sums of money to provide additional information about the effect of his proposed use on the rest of the community is unreasonable.

The attitude of the Board of Adjustment was well described by the court below when the denial of the special exception was appealed. In stating that the record did not support some of the Board's findings as to violation of some of the standards, the court stated that several of the Board's demands were "completely arbitrary and high handed". The court below also stated that it was not within the province of the Zoning

Board to "invade the regulatory powers of other independent or superior agencies" or to go into problems other than zoning "as a pretended but spurious exercise of its zoning function". Referring to the "overzealous and misconceived exercise of power" by the Board, the court below found that there was no evidence to sustain violations of various of the standards which the Zoning Board had concluded had been violated.

In spite of these conclusions, the court below nevertheless upheld the Zoning Board's denial of the permit for a special exception because, according to the court below, the record did contain evidence to sustain four of the ultimate findings as to violations of four of the standards in the ordinance. An examination of the record, however, reveals that there was no evidence to sustain even these four violations of the four standards.

The court stated that two of these standards related to the "rural character" of the neighborhood and that there was sufficient evidence in the record to indicate that the Board properly considered maintaining the "rural character" of the neighborhood. The problem with this is that the Zoning Board of Adjustment is not the legislative body making the laws for Northampton Township. It administers the laws which have been passed by the Township. In this case the Township had already determined, by its adoption of the ordinance, that apartment buildings were properly permitted in the district. There was no attempt by the Township to keep apartments out of this district in order to maintain a "rural character". The Zoning Board of Adjustment cannot amend the zoning ordinance. It only administers the zoning ordinance. Once the Township council made its determination that apartment buildings could be properly constructed in the district, it was for the Zoning Board to accept this

decision and to concern itself only with whether or not specific apartment buildings would meet or violate any of the standards enumerated. To say that a Township council can pass an ordinance allowing apartment buildings in a certain district so long as standards are met, and then to turn around and say that one of the standards is to preserve the rural character and that apartment buildings would violate this standard, confuses the function of the legislative enactment with the function of administration of the zoning ordinance. The decision has already been made by the Township council that apartment buildings *are permitted*. Since they are permitted, the decision has already been made that the *rural character* of the neighborhood will not stay as it has been. Thus the evidence in the record concerning rural character, used to sustain denial of the special exception permit, was outside the function and scope of the Zoning Board of Adjustment.

The Caldwells, in addition to providing rather complete information with their application, offered on various occasions to comply with any requirements of state, local, or federal law. They offered to follow the suggestions or conditions which might be laid down as to subdivision regulations, health matters, water matters, and other things. In such a posture the Board of Adjustment improperly denied the special exception permit.

One of the other reasons stated by the court below for upholding the Board's denial was that there was a possibility of a violation of some of the zoning regulations or subdivisions regulations because of road frontage problems. Examination of this indicates that it is a purely hypothetical possibility. Even with the hypothetical posture of the problem, the Caldwells agreed to do anything necessary to satisfy the Board.

The Zoning Board of Adjustment is required under the law to sustain its findings by competent evidence,

not to arbitrarily state, on the basis of imposing unreasonable burdens upon the citizen, that the citizen is not entitled to use his property for a use which is permitted so long as there is no adverse affect. The absence in this case of competent evidence to sustain the Board's findings leads to the conclusion that the Caldwells' application for a special exception was improperly denied.

Judge CRUMLISH joins in this dissent.